**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES SPALO, an individual; and MARY SPALO, an individual. | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No._____ |
| v. | ) ) ) | SAFETY-KLEEN SYSTEMS, |
| UNION PACIFIC RAILROAD COMPANY, a Utah corporation, SAFETY-KLEEN CORPORATION, a Wisconsin corporation, and SAFETY-KLEEN SYSTEMS, INC., a Wisconsin corporation. | ) ) ) ) ) ) | INC.'S NOTICE OF REMOVAL |
| Defendants. | ) | |

---

### DEFENDANT SAFETY-KLEEN SYSTEMS, INC.'S NOTICE OF REMOVAL

COMES NOW, DEFENDANT SAFETY-KLEEN SYSTEMS, INC. ("SK"), by and through its undersigned counsel, and hereby submits this Notice of Removal, pursuant to 28 U.S.C. §1332, 1441 and 1446, and in support thereof states the following grounds for federal jurisdiction in this case:

### I.    PRELIMINARY MATTER – IMPROPER PARTY

1.    Plaintiffs have improperly named "Safety-Kleen Corporation" as a party to this lawsuit.  The corporate entity known as "Safety-Kleen Corporation" properly changed its name in 1998 to Safety-Kleen Systems, Inc.  *See* Affidavit of Mr. Brad Carl, attached hereto as Exhibit A.  Plaintiffs' assertion of claims against "Safety-Kleen Corporation" in this lawsuit is a case of misnomer or mistaken identity.  *Id.* at ¶ 4.  A similarly-named entity, "Safety-Kleen Corp.," was dissolved by order of the United States Bankruptcy Court for the District of Delaware, effective December 24, 2003, and, as such, Safety-Kleen Corp. is not a proper party to this suit  *Id.* at ¶ 6.

To the extent Plaintiffs' claims are interpreted to be against "Safety-Kleen Corp.," such claims are barred.

## II.    **BACKGROUND**

2.      Plaintiffs James Spalo and Mary Spalo ("Plaintiffs") commenced this action, styled *James Spalo and Mary Spalo v. Union Pacific Railroad Co., et al*, Case No. 2017-L-3103, in the Circuit Court of Cook County, Illinois on March 24, 2017. Approximately two hours later on March 24, 2017, Plaintiffs filed an identical complaint, styled *James Spalo and Mary Spalo v. Union Pacific Railroad Co., et al*, Case No. 2017-L-3098, in the Circuit Court of Cook County, Illinois. On April 10, 2017, Case No. 2017-L-3103 was "consolidated" into Case No. 2017-L-3098. *See* "Agreed Order," attached hereto as Exhibit B.[1]

3.      In this lawsuit, Plaintiffs allege that Mr. Spalo is employed in Cook County, Illinois by Defendant Union Pacific Railroad Co. ("UP") as a machinist (and has been since "approximately 2000"), and that, in this capacity, Mr. Spalo was exposed to, *inter alia*, harmful "diesel exhaust" and "second hand cigarette smoke," and that, as a result of said exposures, Mr. Spalo "contracted renal cancer." *See* Complaint ("Complaint") attached hereto as Exhibit C, at ¶¶ 6-8, 14. Plaintiffs also allege that Mr. Spalo was exposed at some unknown points in time during a seventeen-year period to unidentified "cleaning solvents and machines" that were "manufactured, sold, distributed and/or supplied" by SK. *Id.* at ¶ 21.

4.      Plaintiffs assert claims against UP under two federal statutes:   the Federal

---

[1] According to the attached "Agreed Order," Plaintiffs' counsel "inadvertently filed the same case twice." *See* Ex. B. Case No. 17-L-3103 was served on SK on April 4, 2017. As of the filing of this Notice, Case No. 17-L-3098 has not been served on SK. According to the attached Order, both Case No. 17-L-3103 and Case No. 17-L-3098 are "the same," so out of an abundance of caution, SK is filing this Notice within 30 days after first being served with *either* version of the "same" Complaint. For the Court's convenience, the complaints in both Case No. 17-L-3103 and Case No. 17-L-3098 are attached hereto as part of Exhibit B. Because SK has only been served with the complaint in Case No. 17-L-3103, SK will cite to that version of the complaint herein (though this distinction is likely irrelevant because both complaints are "the same"). *See* Ex. B.

**SAFETY-KLEEN SYSTEMS INC.'S NOTICE OF REMOVAL**                                          2

Employers' Liability Act ("FELA"), and the Locomotive Inspection Act ("LIA"). *See* Ex. C, at ¶¶ 1-19.

5.     Under FELA, Plaintiffs allege, *inter alia*, that UP: (i) Caused Mr. Spalo to be exposed to "unreasonably excessive amounts of diesel exhaust" from "diesel locomotives"; (2) Failed to provide Mr. Spalo "with diesel locomotives, equipment and appurtenances that were in . . . reasonably safe condition"; (3) Failed to "warn" Mr. Spalo of the "hazards of diesel exhaust"; and (4) Failed to "timely upgrade its diesel locomotives and equipment . . . to minimize exposure to diesel exhaust and dangerous chemicals and other hazardous substances." *See* Ex. C, at ¶ 13, (a), (d), (f), (m).

6.     In fact, of the sixteen (16) subparts to Plaintiffs' FELA claim, twelve (12) involve allegations regarding UP's alleged failure to protect Mr. Spalo from harms related to locomotive "diesel exhaust" and/or "diesel locomotives." *See* Ex. C, at ¶ 13, (a), (b), (c), (d), (f), (g), (h), (i), (j), (k), (l), and (m).

7.     Similarly, Plaintiffs' claim against UP under the LIA alleges that Mr. Spalo was harmed: (i) due to the allegedly "improper and unsafe" condition of the "locomotives" he worked around, and (ii) due to the "diesel exhaust" he was allegedly exposed to as a locomotive machinist. *See* Ex. C, at ¶¶ 18, 19.

8.     Thus, Plaintiffs' claims against UP are almost exclusively related to: (i) Union Pacific's unique status as a railroad operator under FELA and the LIA, and (ii) to the injuries allegedly suffered by Mr. Spalo as a machinist working on or around said railroads.

9.     Conversely, Plaintiffs' claim against SK does not originate under FELA, the LIA, or *any* statute pertaining to railroad companies. Instead, Plaintiffs assert a single common law "negligence/loss of consortium" claim against SK for alleged acts or omissions that are separate and independent from Mr. Spalo's alleged exposure to harmful locomotive "diesel exhaust" and

to "locomotives" in violation of various FELA and LIA statutory provisions. *Id.* at ¶¶ 20-30.

10. Plaintiffs further allege that this is an action for damages including "expenses for hospital, medical and other health services," "lost wages and benefits," "physical pain and mental and emotional suffering," and that Mr. Spalo's "earning capacity has been permanently diminished or lost entirely." Pursuant to applicable Illinois state rules that limit the ability to plead a specific dollar amount, Plaintiffs allege that they seek an "amount in excess of Fifty Thousand Dollars ($50,000) together with costs of suit and all other appropriate relief" for *each* claim against Union Pacific (FELA and LIA). *See* Ex. C at pgs. 5, 6. In addition, Plaintiffs allege that they further seek from SK an "amount in excess of Fifty Thousand Dollars ($50,000) together with costs of suit and all other appropriate relief" in relation to their "negligence/loss of consortium" claim. *See* Ex. C at pg. 9.

## III.   TIMELINESS OF REMOVAL

11. On April 4, 2017, Plaintiffs served the Complaint (Case No. 17-L-3103) and "Service of Process" on SK. *See* Service of Process Transmittal, attached as Exhibit D. SK timely files this Notice of Removal within thirty (30) days of service of process upon SK and first ascertaining that the action is removable. *See generally* 28 U.S.C. §1446. Less than one (1) year has elapsed since the commencement of Plaintiffs' underlying state court action. *Id.*

## IV.   BASIS FOR REMOVAL: DIVERSITY JURISDICTION

12. Pursuant to 28 U.S.C. § 1441, this Court has jurisdiction over this removal action. *See* 28 U.S.C. § 1332(a), 1441. Specifically, this Court maintains federal diversity jurisdiction because: (1) there is complete diversity of citizenship between Plaintiffs and all Defendants, including those improperly named, and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs.

13. A defendant seeking removal must make a "short and plain statement of the

**SAFETY-KLEEN SYSTEMS INC.'S NOTICE OF REMOVAL**                                                  4

grounds for removal." 28 U.S.C. § 1446(a). Section 1446 (a) "tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 553 (2014). "[C]ourts should 'apply the same liberal rules [to removal allegations] that are applied to other matters of pleading.'" *Id.*

A. **Diversity of the Parties**

   i. ***Plaintiffs are citizens of Illinois.***

14.     For purposes of federal diversity jurisdiction, there is no statutory definition of an individual's citizenship. *Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730 (7th Cir. 1991). However, courts within the Seventh Circuit have held that it is "the state of the individual's domicile." *Id.* "Generally speaking, one's domicile is one's permanent home, or the place to which one intends to return when absent." *Mader v. Motorola, Inc.*, 175 F.3d 1020 (7th Cir. 1999); *see also Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("domicile is established by physical presence in a place" and "one's intent to remain there.").

15.     Domicile is determined "from the totality of the circumstances," and courts within the Seventh Circuit generally focus on such indicia as "residence, voting practices, location of personal and real property, bank and brokerage accounts, membership in associations, place of employment, driver's license, auto registration, and payment of state taxes." *Mader*, 175 F.3d at 1020; *see also Galva Foundry Co.*, 924 F.2d at 730 (the state wherein an individual "worked" for an extended period of time helped to establish that state as the individual's domicile).

16.     Should there be contested factual allegations regarding an individual's domicile (and thus whether a federal court has jurisdiction), the proponent of federal jurisdiction must "prove those jurisdictional facts by a preponderance of the evidence." *Meridian Security Ins., Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

17.     In the present suit, Plaintiffs improperly failed to plead in their Complaint either

their state of citizenship, or the address of their current domicile. *See* Ex. C. Despite this failure, Plaintiffs may nevertheless concede, or at minimum not dispute, that they are domiciled in the State of Illinois. However, should Plaintiffs attempt to raise any factual allegations regarding their state of domicile, the totality of the circumstances indicates by a preponderance of the evidence that Plaintiffs are in fact presently domiciled in Illinois, and were so domiciled at the time this lawsuit was commenced in March 2017.

18.     First, according to the Complaint, Mr. Spalo has worked in Cook County, Illinois since at least 2000, and continued to work in Cook County, Illinois at the time the Complaint was filed in March 2017. *See* Ex. C, at ¶ 6; *see also Mader*, 175 F.3d at 1020 (holding that an individual's "place of employment" may be used to establish that individual's domicile). In particular, the Complaint alleges that, from "2000 to the present," Mr. Spalo has been employed <u>and</u> continues to be employed "as a machinist at [UP's] Proviso Yard in Cook County, State of Illinois." *See* Ex. C, at ¶ 6. Because Mr. Spalo has worked in Cook County, Illinois for at least the last seventeen (17) years, the preponderance of the evidence indicates that Plaintiffs are in fact domiciled in the State of Illinois.[2]

19.     Second, Plaintiffs allege that "[a]ll or a substantial part of the events, actions, or omissions giving rise to Plaintiff's cause of action occurred within the jurisdiction of this Court [the Circuit Court of Cook County, Illinois]." *See* Ex. C, at ¶ 5. Thus, by Plaintiffs' own admission, the conduct providing the basis for their claims in this lawsuit occurred in Illinois. *Id.*

20.     Finally, as indicated in the documents attached hereto as Exhibit E, Plaintiffs

---

[2] Even were Plaintiffs to belatedly allege that their primary residence is in Indiana (the closest neighboring state to Mr. Spalo's Chicago work place), and that accordingly, they are citizens of Indiana instead of Illinois, neither SK nor UP is a citizen of Indiana. Accordingly, complete diversity would still exist, and all jurisdictional prerequisites would still be satisfied.

currently reside in DuPage County, Illinois.[3]

21.     In sum, the preponderance of the evidence indicates that Plaintiffs are citizens of Illinois, and no fact has been asserted or alleged to suggest that Plaintiffs are domiciled anywhere other than Illinois.  Plaintiffs are thus citizens of Illinois for the purposes of 28 U.S.C. § 1332.

### ii.     Defendant SK is a citizen of Wisconsin and Texas.

22.     "[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c).  In the present suit, Plaintiffs improperly failed to plead in their Complaint the citizenship of SK.  *See* Ex. C.  SK is however a Wisconsin corporation.  *See* Ex. A, at ¶ 5.  SK's principal place of business is located in Richardson, Texas.  *Id.*  SK is therefore a citizen of Wisconsin and Texas.

### iii.     Defendant Safety-Kleen Corporation is an improper party.

23.     Plaintiffs improperly failed to plead in their Complaint the citizenship of Safety-Kleen Corporation.  *See* Ex. C.  "Safety-Kleen Corporation" is an improper party because it properly changed its name in 1998 to Safety-Kleen Systems, Inc.  *See* Ex. A at ¶ 4.   "Safety-Kleen Corp." no longer operates as a result of a 2003 bankruptcy.  *See* Ex. A at ¶ 6 (further noting that Safety-Kleen Corp. was a Delaware corporation when it was in existence).  Because neither "Safety-Kleen Corporation" or "Safety-Kleen Corp." were in operation at the time Plaintiffs filed their lawsuit, the citizenship of these entities is not relevant for diversity purposes.

### iv.     Defendant UP is a citizen of Utah and Nebraska.

24.     Plaintiffs improperly failed to plead in their Complaint the citizenship of UP.  *See* Ex. C.  UP is however a Utah corporation, and its principal place of business is located in

---

[3] Plaintiffs' exact addresses, social security numbers, and certain other identifying information have been redacted (leaving unredacted information sufficient to establish that Plaintiffs presently reside in Illinois).

Nebraska. *See* Exhibit F.[4]  UP is thus a citizen of Utah and Nebraska.

25.     Based upon the foregoing, because Plaintiffs are citizens of Illinois, SK is a citizen of Wisconsin and Texas, and UP is a citizen of Utah and Nebraska, complete diversity between the parties exists and removal is proper pursuant to 28 U.S.C. §§ 1332(a) and 1441.

**B.     Amount in Controversy**

26.     Pursuant to applicable Illinois pleading rules, Plaintiffs do not assert a specific amount in controversy as to any of their claims against any defendants, other than to "demand" for each cause of action asserted "an amount in excess of Fifty Thousand Dollars ($50,000) together with costs of suit and all other appropriate relief." *See* Ex. C, at pg. 5, 6, and 9.  Thus, Plaintiffs seek "in excess" of $50,000, exclusive of costs, from *each* of the following defendants in relation to *each* of the following claims: (i) UP in relation to the FELA claim; (ii) UP in relation to the LIA claim; and (iii) SK in relation to the negligence/loss of consortium claim. *Id.*

27.     When a plaintiff's complaint does not state a particular amount in controversy, a defendant's notice of removal may do so. 28 U.S.C. § 1446(c)(2)(A); *see also Dart*, 135 S.Ct. at 551. "When a defendant seeks federal-court adjudication, the defendant's amount-in controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 553. "[D]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met.  Rather, defendants may simply allege or assert that the jurisdictional threshold has been met." *Id.* at 554.

28.     "[A] proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence." *See Meridian Security Ins. Co.*, 441 F.3d at 543 (7th Cir. 2006).  But once the party seeking removal

---

[4] "Form 10-K" for Union Pacific Corporation (noting at page 5 that "Union Pacific Railroad Company is the principal operating company of Union Pacific Corporation.")

establishes by a preponderance of the evidence that the amount in controversy exceeds $75,000, remand is then proper "[o]nly if it is 'legally certain' that the recovery (from the plaintiff's perspective) . . . will be less than the jurisdictional floor. . ." *Id.* Complaints alleging "serious, permanent injuries and significant medical expenses" are "unambiguous[ly]" ripe for removal because the plaintiff almost certainly will seek more than $75,000. *RBC Mortgage Co. v. Couch*, 274 F. Supp. 2d 965, 969 (N.D. Ill. 2003).

29.     Plaintiffs – in compliance with Illinois pleading requirements – only averred that each claim against each defendant was worth "in excess" of $50,000 per claim. *See* Ex. C, at pg. 5, 6, and 9.  However, based upon the Complaint's allegations, Plaintiffs' claim of serious and "permanent" injuries, and Plaintiffs' theories of recovery as detailed in their Complaint, it is facially apparent from Plaintiffs' Complaint that the amount in controversy exceeds $75,000.

*i.     The amount in controversy against UP exceeds $75,000.*

30.     Mr. Spalo's two claims against UP (FELA and LIA) may be aggregated in order to meet the amount in controversy requirement. *Clark v. State Farm Mut. Auto. Ins. Co.*, 473 F.3d 708, 711 (7th Cir. 2007) (an individual plaintiff's multiple claims against an individual defendant may be aggregated).  Because Plaintiffs seek "in excess" of $50,000 for *each* of Mr. Spalo's two claims against UP (seeking, at minimum, $100,000 from UP), it is facially apparent from the Complaint that the amount in controversy requirement is met as to UP. *Id.*; *see also* Ex. C at pgs. 5, 6.

31.     Moreover, the nature of the alleged harms suffered by Mr. Spalo also makes it facially apparent that the amount in controversy requirement is met as to the claims against UP. As a result of the harms alleged in Mr. Spalo's FELA and LIA claims, Plaintiffs contend that Mr. Spalo has incurred past medical expenses, and "*will continue to incur* necessary [medical] expenses for hospital, medical and other health care services," and that Mr. Spalo's "earning

capacity has been permanently diminished or *lost entirely*." *See* Ex. C at pgs. 5, 6 (emphasis added). Accordingly, when considering both: (1) Plaintiffs' actual pleading as to the amount of alleged damages related to Mr. Spalo's two claims against UP (totaling, at minimum, $100,000), and (2) the serious and "permanent" nature of those alleged damages as cited above, SK has established by a preponderance of the evidence that the amount in controversy requirement is satisfied as to Plaintiffs' claims against UP.

ii.     ***The amount in controversy against SK exceeds $75,000.***

32.     Mr. Spalo asserts a negligence claim against SK wherein Plaintiffs demand an amount "in excess" of $50,000. *See* Ex. C at pg. 9. The nature of the alleged harms suffered by Mr. Spalo as a result of Safety-Kleen's alleged negligence makes it apparent from the face of the Complaint that the amount in controversy related to Mr. Spalo's negligence claim against Safety-Kleen exceeds $75,000.

33.     For example, Plaintiffs contend that: (i) Mr. Spalo has incurred past medical expenses, and "*will continue to incur* necessary [medical] expenses for hospital, medical and other health care services,"; (ii) that Mr. Spalo "has experienced and *will continue to experience* physical pain and mental and emotional suffering,"; (iii) that Mr. Spalo has "incurred and *will continue to incur* lost wages and benefits," and (iv) that Mr. Spalo's "earning capacity has been *permanently diminished* or *lost entirely*." *See* Ex. C, at ¶ 28. (emphasis added).

34.     In sum, Plaintiffs allege that the harm experienced by Mr. Spalo as a result of SK's alleged negligence is serious and "permanent" in nature. *See* Ex. C, at ¶ 28. A complaint alleging these types of serious, permanent injuries is ripe for removal. *See RBC Mortgage Co.*, 274 F. Supp. 2d at 969. Accordingly, the preponderance of the evidence indicates that the

amount in controversy related to Mr. Spalo's negligence claim is in excess of $75,000.[5]

35. Moreover, a survey of recent Cook County, Illinois cases involving a negligence claim within a products liability context reveals that prevailing plaintiffs regularly recover in excess of $75,000 in relation to the negligence claim. *See* Exhibit G; *see also* Ex. A at ¶ 8.

36. In addition, the preponderance of the evidence indicates that the amount in controversy related to Mrs. Spalo's loss of consortium claim against SK is in excess of $75,000. A survey of recent Cook County, Illinois cases involving loss of consortium claims within a products liability context reveals that prevailing plaintiffs regularly recover in excess of $75,000 in relation to the loss of consortium claim. *See* Exhibit H; *see also* Ex. A at ¶ 8.

## V. OTHER PROCEDURAL MATTERS

37. Plaintiffs voluntarily chose to unite their FELA claim against UP with a removable negligence claim against SK. *See* Ex. C. Accordingly, Plaintiffs waived their rights under 28 U.S.C. § 1445(a), and the entire lawsuit – including both FELA and non-FELA claims – may be properly removed to federal court. *See Monroe v. Mo. Pac. R.R. Co.*, 115 F.3d 514, 520 (7th Cir. 1997) (rights under § 1445 are "personal privilege[s] which may be waived") (Fairchild, J., dissenting in part); *see also Emery v. Chicago B. & Q.R. Co.*, 119 F. Supp. 654, 657 (S.D. Iowa 1954).[6]

38. In rejecting plaintiff's motion to remand his FELA claim, *Emery* held as follows:

> It rested with [plaintiff] whether he should state a cause solely under the Act [FELA] and therefore not removable, or unite it with causes of action which might be removed. When [plaintiff] adopted the latter course, defendant then became entitled to exercise the right of removal conferred upon it by the statutes as to the causes of action properly removable. ***This carries the entire case to this [federal] court.***

---

[5] A "removing defendant need not confess liability in order to show that the controversy exceeds" the required threshold. *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008).
[6] "A civil action in any State court against a railroad or its receivers or trustees, arising under [FELA], may not be removed to any district court for the United States." 28 U.S.C. § 1445(a).

*Emery*, 119 F. Supp. at 657. (emphasis added).

39.      Numerous other courts have agreed that the statutory prohibition precluding the removal of FELA claims (28 U.S.C. § 1445(a)) does <u>not</u> prevent the removal of FELA claims which are joined with separate and independent removable claims.  *See Palser v. Burlington Northern R. Co.*, 698 F. Supp. 793, 795 (E.D. Mo. 1988) (finding § 1445(a) "does not prevent removal of plaintiff's FELA claims, under section 1441(c), which [were] joined to plaintiff's separate and independent removable discrimination claim"); *Hages v. Aliquippa & Southern R.R. Co.*, 427 F. Supp. 889, 892 (W.D. Pa. 1977) (removal proper after plaintiff joined his FELA claim with a state law claim); *Jacobson v. Chicago, M St. P. & P. R. Co.*, 66 F.2d 688, 693-94 (8th Cir. 1933) (removal proper when FELA claim was joined with a state claim); *Samczyk v. Chesapeake & Ohio Ry. Co.*, 643 F. Supp. 79, 80 (E.D. Mich. 1986) (holding that § 1445(a) did not override § 1441(c) to prevent removal of a FELA claim when that claim is joined with a "separate and independent" removable claim).

40.      Removal is proper because Plaintiffs' FELA and LIA claims against UP are separate and independent from Plaintiffs' negligence/loss of consortium claim against SK.  *See Monroe*, 115 F.3d at 520 (§ 1445 "does not require remand" when a plaintiff "invokes state law" claims that are "sufficiently independent from claims arising under FELA").  "Separate and independent" has been defined as distinct; apart from; self-sustaining; not contingent or conditioned.  *Snow v. Powell*, 189 F.2d 172, 174 (10th Cir.1951).  Though lumped in to the same lawsuit, Plaintiffs' negligence claim against SK is in no way "contingent or conditioned" on Plaintiffs' FELA and LIA claims against UP (and vice versa).

41.      Plaintiffs' claims against SK center on alleged acts and omissions that – by

definition – occurred at separate times and places than the acts alleged against UP.[7]  For

example, Plaintiffs allege: (1) that SK "failed to warn" Mr. Spalo about the "risks" of SK product

usage; (2) that SK failed to "adequately test its products" before providing them to Mr. Spalo;

and (3) that SK failed to consider "safer alternatives" when manufacturing its "products."  *See*

Ex. C. at ¶ 26.  Plaintiffs also allege that SK has corporate knowledge regarding the "toxic and

dangerous" nature of its unspecified products.  *Id.*

    42.    Plaintiffs' claims that SK "failed to warn," or that it "failed to adequately test," or

that it failed to consider "safer alternatives," involve alleged acts that obviously occurred at

separate times and places than <u>any</u> act alleged in this lawsuit against UP.  In short, these

allegations involve separate and distinct actions by individuals associated with SK that have

nothing whatsoever to do with UP's FELA obligations to Mr. Spalo (or to its alleged breach of

those obligations).

    43.    Moreover, any duty owed to Mr. Spalo by SK is, by definition, non-contingent

and apart from the non-delegable duties owed to Mr. Spalo by UP under FELA.  *Payne v.

Baltimore & O. R. Co.*, 309 F.2d 546, 549 (6th Cir. 1962); *see also Bock v. Nat'l R.R. Passenger

Corp.*, 1989 WL 65036, at *3 (N.D. Ill. June 8, 1989) (under FELA, "a railroad has a non-

delegable duty to provide its employees with a safe place to work").

    44.    Plaintiffs' FELA claim against UP and their negligence claim against Safety-

Kleen are further distinguished because a different causation standard applies to each claim.  *See

Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 506 (1957).  A private cause of action under

FELA has a much lower standard of causation than a common law negligence claim.  *Id.*  In fact,

the Seventh Circuit recently affirmed "precedent solidly establishing that the causation standard

---

[7] Plaintiffs do not allege that SK and UP were engaged in a conspiracy, or otherwise acted in concert.  *See*
Ex. C.

in FELA actions is more 'relaxed' than in tort litigation generally." *McBride v. CSX Transp.,* *Inc.*, 598 F.3d 388, 403 (7th Cir. 2010), *aff'd*, 564 U.S. 685 (2011) (further holding that common-law proximate causation in not required under FELA). Therefore, unlike Plaintiffs' FELA claim against UP, their negligence claim against SK requires both the establishment of a breach of a duty *and* the establishment of proximate cause. *See Jones v. Chicago HMO Ltd. of Illinois*, 730 N.E.2d 1119, 1129 (2000).

45.     Finally, it has long been held that FELA does not recognize loss of consortium as a cause of action. *See Dixon v. CSX Transp., Inc.*, 990 F.2d 1440, 1443 (4th Cir.1993) (testimony of plaintiff's wife regarding loss of services was highly prejudicial and irrelevant because loss of consortium is not actionable under FELA).

46.     For reasons detailed above, Plaintiffs' negligence/loss of consortium claim against SK would have been removable if sued upon alone (*e.g.*, Plaintiffs and SK are diverse, and the amount in controversy is in excess of $75,000). Plaintiffs voluntarily chose to join their initially non-removable FELA claim with the separate and independent claim against SK, thus rendering the "entire" case removable. *See Emery*, 119 F. Supp. at 657; *see also Palser*, 698 F. Supp. at 795; *Hages*, 427 F. Supp. at 892; *Jacobson*, 66 F.2d at 693-94; *Samczyk*, 643 F. Supp. at 80.

47.     Furthermore, Plaintiffs' claim against SK does not involve the same alleged wrongs, the same facts, or the same transactions as their claims against UP. Instead, this claim is "distinct" and "apart from" UP's obligations under FELA and the LIA (and to UP's alleged breach of its obligations under those statutes). *Snow*, 189 F.2d at 174.

48.     In sum, it rested with Plaintiffs whether to state a claim solely under FELA and thus prohibiting removal under 28 U.S.C. § 1445(a), or to unite their FELA claim with a removable cause of action. Plaintiffs chose the latter option. As a consequence, SK is entitled to exercise the right of removal conferred by the removal statutes. This carries the entire case to

federal court.

## VI.   CONSENT

49.     Defendant UP consents to this removal action.

## VII.   OTHER REQUIREMENTS FOR REMOVAL

50.     In accordance with 28 U.S.C. §§ 1446(a) and 1447 (b), a copy of the process, pleadings, and orders that were served upon SK in the state court action are attached hereto as Exhibits B, C, and D.

51.     Pursuant to 28 U.S.C. § 1446(d), SK has given written notice of the Notice of Removal to adverse parties and has filed a copy of the notice with the clerk of the Circuit Court of Cook County, Illinois.  SK has complied with all the requirements for removal under Title 28, United States Code.

## VIII.   CONCLUSION

WHEREFORE, Defendant Safety-Kleen Systems, Inc. respectfully requests that the above-styled action be removed from the Circuit Court of Cook County, Illinois to the United States District Court for the Northern District of Illinois, Eastern Division.

May 4, 2017

                                            Respectfully submitted,

                                            */s/ David M. Heilmann*
                                            DAVID M. HEILMANN

DAVID M. HEILMANN
CLAUSEN MILLER P.C.
Firm I.D. No. 90181
10 South LaSalle Street
Chicago, Illinois 60603-1098
(312) 855-1010
**ATTORNEY FOR DEFENDANT SAFETY-KLEEN SYSTEMS, INC.**

CERTIFICATE OF SERVICE

The undersigned certifies under penalty of perjury under the laws of the State of Illinois that, on the date given below, he caused to be served a copy of Defendant Safety-Kleen Systems, Inc.'s Notice of Removal upon the following person(s) via First Class U.S. mail, postage prepaid and electronic mail to:

Kenneth P. Danzinger
Ted N. Gianaris
Simmons Hanly Conroy
One Court Street
Alton, IL 62002
(618) 259-2222
(618) 259-2251 (fax)
kdanzinger@simmonsfirm.com
tgainaris@simmonsfirm.com
Attorneys for Plaintiffs

Daley Mohan Groble PC
55 West Monroe, Suite 1600
Chicago, IL 60603
(312) 422-9999
(312) 422-5370 (fax)
Attorneys for Union Pacific Railroad Company

DATED this 4th day of May, 2017.

/s/ David M. Heilmann
DAVID M. HEILMANN